THE MAYOR AND COMMON COUNCIL OF NEWARK, ADS. THE
STATE, S. BATTEN AND OTHERS, PROSECUTORS.

The power of laying out public streets in the city of Newark was, by an
act approved twentieth of March, 1857, taken from the common coun-
cil, and vested in a board of commissioners. Afterwards, by ordinance
of tenth of August, 1857, the mayor and common council laid out a
new street, to be called McWhorter street, and on the ——— day of
———, of same year, passed an ordinance to grade and curb said
street, and assess the expense of such improvement in the mode pro-
vided for in the charter. On the seventh of May, 1860, such assess-
ment was approved by the mayor, and fell, in part, on property of the
prosecutors, who brought this *certiorari* to have the assessment declared
illegal and void. *Held*—

1. That the power of laying out streets was vested exclusively in the
board of commissioners, for three years, under the act of twentieth of
March, 1857, as declared by this court, in *The State* v. *Newark,* 4
*Dutcher* 491.

2. Assuming, however, that the ordinance of tenth of May, 1857, laying
out the street in question, was illegal and void, it does not follow, ne-
cessarily, that the ordinance directing the street to be graded and
curbed, is illegal.

3. If the corporate authorities had, without assessment upon property
owners, acquired title by purchase, or by other lawful means, to the
land for this street, and dedicated it to public uses, and by ordinance
declared it a public street, it is a necessary conclusion that they might,
under the charter, provide for grading and curbing and otherwise
maintaining it.

4. Although there be no direct evidence to show that the land had been
thus actually acquired by the public before the ordinance directing
the assessment was passed, yet the court may legally infer, from facts
and circumstances before them, that it had been so procured by ar-
rangement with the owners before the passage of the ordinance. Every
reasonable intendment is to be made in favor of the conduct of those
who are clothed with a public trust, and are acting in the line of their
duty.

5. Assuming the city to have become the owner of the land, and the
same having been converted into a street, *de facto,* the mayor and com-
mon council had authority, by force of their corporate privilege, to
improve it by grading and curbing it in the same mode as was lawful
in regard to other streets.

6. Should there be any doubt as to the validity of the assessment, it can-
not be questioned since the passage of the act of 1862, (*Pamph. Laws*

336,) which provides that assessments for the improvement of streets laid out by authority of the common council, shall be held as good and valid as if such streets, &c., had been laid out by commissioners. Such provision is not in conflict with the constitution of the state, nor with any principle of natural justice.

7. This case distinguished from the case in 4 *Dutcher*, above referred to.

Error to the Supreme Court.

A certain ordinance of the mayor and common council of the city of Newark, laying out a new street, to be called McWhorter street, was passed. tenth of August, 1857, and on the nineteenth ————, of same year, another ordinance was passed to grade and curb said new street, and to assess the expense of such improvement in the mode provided in their charter. The assessment was made on the sixth of May, 1860. Some persons owning property which was assessed, brought the assessment and proceedings into the Supreme Court by *certiorari*, where they were declared illegal and set aside. To reverse the judgment of that court, this writ of error was brought.*

The case was argued by—

*T. Runyon* and the *Attorney General*, for the plaintiffs in error, and

*C. Parker*, for defendants.

The opinion of the court was delivered by

THE CHIEF JUSTICE. By an act, approved twentieth of March, 1857, the legislature vested in a board of commissioners to be appointed by the mayor and common council of Newark, the authority to lay out streets in that city. In

---

* The judgment of the Supreme Court was rendered in this case before the present reporter came into office, and he regrets that the opinion of the court has not come to his hands.

the case of *The State* v. *Newark*, 4 *Dutcher* 491, it was held, on grounds which appear fully to warrant the conclusion that by the force of this statute the corporate authorities were entirely stripped of all power over the subject confided to the tribunal thus newly organized, and, in accordance with such view, an ordinance passed by the common council, after such statute had gone into operation, creating a new street, was declared inoperative and void.

It appears from the return in this case, that on the tenth of August, 1857, the mayor and common council of Newark enacted an ordinance laying out a new street, to be called McWhorter street, in said city, and that afterwards, on the nineteenth of June, in the same year, they likewise passed an ordinance to grade and curb such new street, and to assess the expense of such improvement in the mode provided in their charter. Such assessment was made, and on the seventh of May, 1860, was approved of by the mayor. This assessment fell, in part, on the property of the prosecutors of this *certiorari*, and this proceeding was instituted by them to free themselves of this burthen, which they deem to be illegal.

It is to be noticed, *in limine*, that the prosecutors do not show that the laying out of the street in question was a direct injury to them. No part of their land appears to have been appropriated for that purpose, nor have they been assessed to pay the purchase money of such land, so that their only ground of complaint seems to be, that they have been consequentially affected by being made liable to a quota of the expense of grading and curbing the street. They can claim, by this prosecution, therefore, nothing more than to have removed from them the assessment in dispute, if the same be unlawful. The question, consequently, now before this court is not the same which was settled in the decision above cited from 4 *Dutcher*. In that case the controversy was waged between the city and a citizen, who was assessed to pay for the land the corporation claimed the right to take, by force of the original ordinance, and the point to be de-

termined was, simply, the legality of such ordinance. But in the proceedings now before this court, the question is presented whether, on the assumption that such original ordinance laying out the street was illegal and void, the subsequent ordinance, directing the street to be graded and the expenses assessed, is equally so.

It seems to me, that it must be admitted, that under certain circumstances, these two questions are entirely distinct. Assuming the existence of certain facts, the ordinance directing the street to be graded is in no wise dependent on the ordinance creating such street. The former may be, in every respect, valid and legal, while the latter may, to the same extent, be invalid and illegal. Thus, on the concession that the corporate authorities proceeded to acquire, by purchase from the land-owners, or in any other legitimate mode, the land requisite for this street, and, after such acquisition, dedicated such land to public uses, and by ordinance declared it a street, it seems to me that the conclusion is not to be avoided that they have the power, under the charter of the city, to provide for the grading and curbing and otherwise maintaining such street. It is to be recollected that the charter of the city leaves with the mayor and common council the entire control of the streets after they are laid out, and the consequence, therefore, is, that if a street which has originated in an illegal act of the municipal legislature, but which has, in point of fact, been opened and actually laid out, cannot be maintained by taxation, it cannot be maintained at all by any public authority. Taking, then, as conceded premises in this case, that the common council of Newark have, in effect, obtained title to the land forming the bed of the thoroughfare called McWhorter street, and have, by ordinance, devoted it to the use of the public, can it be reasonably contended that such street is to lie forever unimproved ? Would there be no legal power any where to grade and curb it ? Could the sidewalks never be paved ? It seems quite impossible to deny that if, under the condition of things above supposed, the present assessment is not

valid, so will not be a single future assessment for any improvement whatsoever. I cannot concur in such proposition, but must conclude that if the conditions above supposed exist, that is, if the land has been acquired by the city from the original proprietors, and such land has been turned over to the public as an highway, it was competent for the mayor and common council to enact the ordinance directing it to be graded and curbed, and that individuals incidently affected by an assessment made for such purposes cannot defeat such assessment, by merely showing the invalidity of the ordinance creating the street. In such case, the ordinance, by virtue of which the assessment has been ordered, would rest upon the existence of the street, as a matter of fact, and entirely without reference to the character of its origin.

If the foregoing view be correct, then the main inquiry in this case is, does it appear to this court that at the time of the passage of the ordinance directing the assessment, the land for the street in dispute had been actually acquired by the public?

It is admitted that there is no direct evidence on this point. If this circumstance appear in the case at all, it does so by way of inference only. The facts are few. They are these: The ordinance of the tenth of August, 1857, creating McWhorter street, in the second section authorizes and directs the committee on streets and highways to treat with the land-owners for the lands necessary for the street. There is no direct testimony showing that this was done, but on the nineteenth of June, in the same year, the ordinance of that date was passed, and this ordinance refers to this street as one then in existence, and directs it to be graded and curbed. It further appears that this grading and curbing was done under the direction of the city officials. These are the circumstances which are presented on the record before us, and the question, therefore, is, whether, from these facts, we can legally infer that the land for the street had been acquired by arrangement with the owners,

before the passage of the ordinance providing for the grading and assessment ?

Upon reflection, it appears to me that this intendment should be made by the court.  It is not readily to be presumed that the land-owners would have permitted the appropriation, by the city, of their property, without their consent.  It is obvious, that the necessary land could not have been obtained except by agreement with the owners.  There is no reason to suppose that such land-owners have made any objection to the proceedings of the municipal officers. The ordinance creating the street, directed a committee to proceed and purchase the necessary land of the owners. Must not the court presume that this course thus ordered was pursued ?  Are we at liberty to impute a gross trespass to the officers of the city ?  It seems to me that the principle of law, which, under these circumstances, should regulate our action, is clear.  Every reasonable intendment is to be made in favor of the conduct of those who are clothed with a public trust, and are acting in the line of their duty. This rule is thus stated by Phillips, in his work on Evidence (*vol. 1, p.* 450): "Where acts are of an official nature, or require the concurrence of official persons, a presumption arises in favor of their due execution : it is said on such occasions '*omnia presumndtur rite acta.*"  The books afford numerous instances of the application of this principle.  In *Hartwell* v. *Root*, 19 *Johns.* 345, the court states the general doctrine of the law in these words : "The general rule is, that where a person is required to do a certain act, the omission of which would make him guilty of a culpable neglect of duty, it ought to be intended that he has duly performed it, unless the contrary be shown."  A forcible illustration of the scope of this maxim is found in the instance of the information against Lord Halifax, for refusing to deliver up the rolls of the exchequer, in which the court required the prosecutor to prove the negative, that he did not deliver them up.  *Peake's Ev.* 5 ;  *Buler's N. P.* 298.

In *Jackson* v. *Shafer*, 11 *Johns.* 517, land was sold by a

sheriff, and a deed executed by him. It was insisted that the sale was void because it was not shown that there was a previous levy, but the answer made by the court to this argument was, that "it nowhere appears that there has not been a levy, and if it was necessary they would, under the circumstances of the case, presume it to have been done."

But it is not necessary to multiply cases. The above decisions, which both clearly define and correctly apply the rule of law, sufficiently intimate that this case is within the sphere of its operation. The ordinance of the city provided the legal mode of proceeding—that is, to acquire the title to the land first, and then to grade it, and I think it must be presumed that this action was taken. The officers who performed the official acts in question, are not to be converted into trespassers by implication.

Arriving thus at this result, on this point, my previous conclusion here finds its proper application; that is to say, that as the city had become the owners of the land, and as the same had been turned into a street, *de facto*, the mayor and common council had authority, by force of their corporate privileges, to improve it by grading and curbing, in the same mode as was lawful in the instance of any other street.

But, further, it seems to me that if the power of the city authorities, derived from their charter, to make this assessment, be at all a matter of doubt, still, as I am constrained to think, the validity of such proceeding is not to be questioned, since the passage of the statute of this state, approved March twenty-eighth, 1862, (*Pamph. Laws of* 1862, *p.* 336.) The eleventh section of that act is in the following words : " That *no assessment* heretofore made of damages, for or in respect to land or real estate taken for opening a street, road, highway or alley in said city, or for benefits for or in respect of opening any such street, road, highway, or alley, or for any improvement of or to any such street, road, highway, or alley, shall be set aside, avoided, or vitiated, because such street, road, highway, or alley was laid

out by, or by authority of, said common council, but every such assessment shall be deemed and held to be as good, valid, and lawful as if such street, road, highway, or alley had been laid out by the commissioners appointed under the act entitled 'an act authorizing the appointment of commissioners to lay out streets, avenues and squares in the city of Newark,' instead of by, or by the authority of, said common council."

It will be perceived that this clause does not attempt to validate any ordinance passed by the mayor and common council laying out a street. The Supreme Court seem to have supposed, judging from the opinion delivered in this case, that this statute would have that effect, and it was, in consequence of such supposition, regarded as a legislative adjudication, if applied to this case, of the same question decided in the case of the *State* v. *Newark*, reported in 4 *Dutcher*. But this, it is respectfully suggested, was a mistake. The Supreme Court had decided that the city had no right to lay a tax to pay for the land for a street, laid out simply by ordinance of the mayor and common council. The statute, in its application to this case, imparts no such efficacy to an ordinance, but merely provides for making effectual, assessments which had been made for improvements. In other words, we are not asked to hold that the act of the legislature aids the city to acquire the land, but simply that it makes provision, in case the land has been actually acquired, and streets have come, *de facto*, into existence, for the regulation and maintenance of such streets. Whatever the result, therefore, in this case may be, the decision of the Supreme Court above referred to, will stand undisturbed, and will conclusively establish the right as between the property-holder and the municipality; but under the effect of that decision, it is obvious that the question had to be met, what was to done, in that class of cases, in which the city had become owners of the land, by force of illegal ordinances, and had converted such land into actual streets ? It seems to me that it was highly proper for the legislature

to remove, by its intervention, any uncertainty which might exist as to the power of the city to provide, in the usual mode, for the formation and reparation of streets having that origin. It was evident that such streets, in the nature of things, must, in some way, be regulated and improved, and yet it seems difficult to imagine how that end was to be attained, if the act of the mayor and common council, sanctioned and validated by the legislature of the state, was not sufficient for the purpose. The principal argument against the authority of the legislature to enact this curative statute was, that as the original laying out of the road was, *ipso facto*, void, the legislature could not empower the collection of a tax for the expense of improving a road which had no existence. It was urged that, under such circumstances, the citizen got no return for the money taken from him. But this argument proceeds on the footing of the non-acquisition of the land for the street by the city, and consequently it loses all force in the presence of the assumption which, as before stated, is to be made from the facts of this case, that the city did acquire, before proceeding to grade the street, the land which forms it, and devoted it to the public use. The prosecutors, if compelled to pay their quotas of the assessment in question, will obtain the usual equivalent, which is a public street in the vicinity of their property. I have no scruple on the subject of the right of the legislature to pass this act. In my opinion, it is within the narrowest definition of the law-making power. The right to improve a street, already actually in existence, was within the jurisdiction of the city. The ordinance in question was designed to effect such improvement, and it is the admitted rule, that the legislative power is competent to cure all infirmities in acts thus performed in the course of official duty, by public functionaries. Legislative enactments are possessed of every title to respect; they are embodiments of the public will, and bear the sanction of two of the highest departments of government. When such acts are clearly infringements of the safeguards of the constitution, or, perhaps, are gross vio-

lations of natural morality, and the fundamental rights of mankind, they may be disregarded. But, under all other circumstances, no matter how impolitic their provisions, or disastrous their effects, they are obligatory upon all classes and conditions of persons—upon every citizen, and upon all courts. Persuaded, as I am, that the legislative enactment now under consideration is, in no wise, inconsistent with the constitution of this state, nor with any principle of natural justice, I am unwilling to declare it void.

In my opinion, the judgment of the Supreme Court should be reversed.

*For reversal*—BEASLEY, C. J., CLEMENT, CORNELISON, KENNEDY, VAN DYKE, VAIL, WALES.

*For affirmance*—None.